In the United States District Court
for the Southern District of Texas
Houston Division

| | |
|---|---|
| Benjamin Benfer,<br><br>*Plaintiff,*<br><br>*versus*<br><br>City of Baytown, Texas; Barry Calvert, *Individually*,<br><br>*Defendants.* | Civil Action No.<br>  4:22-cv-2196<br>(Jury Trial) |

## Plaintiff's Response to Defendants' Motion to Dismiss

To the Honorable Andrew S. Hanen:

Now comes Plaintiff Benjamin Benfer, responding to Defendants City of Baytown and Barry Calvert's motion to dismiss.[1] Their motion relies on a misleading and self-serving revision of the facts that cannot be credited at this stage. He respectfully shows the Court as follows:

---

[1] Doc. 14.

# Table of Contents

Table of Contents                                                    2

Statement of Issues                                                  3

Standard of Review                                                   3

Summary of the Argument                                             4

Argument                                                             5

   1.   All of Plaintiff's claims against Defendant Calvert easily survive both his motion to dismiss and his qualified immunity defense.     7

      1.1.   Unlawful detention, false arrest, and malicious prosecution under the Fourth and Fourteenth Amendments.                10

      1.2.   Excessive force under the Fourth Amendment.          15

      1.3.   Assault under Texas state law.                       18

   2.   Plaintiff has pled clearly plausible claims under Monell and ratification theories.                                       19

Conclusion                                                          23

Certificate of Service                                              24

## Statement of Issues

1. Whether Plaintiff has stated plausible **§** 1983 and assault claims against Defendant Calvert.

2. Whether Plaintiff has stated a plausible *Monell* claim against Defendant City of Baytown.

## Standard of Review

On a motion to dismiss for failure to state a claim, a court may only dismiss a complaint as a matter of law where the plaintiff fails to state a claim upon which relief may be granted.[2] A complaint must survive when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] Put differently, "[a] claim may *not* be dismissed unless it appears *certain* that the plaintiff cannot prove *any* set of facts that would entitle [them] to legal relief."[4] As a result, motions to dismiss are "viewed with disfavor" and "rarely granted" in this Circuit.[5] The Court must accept the Plaintiff's well-pled facts as true, and view them in the light most favorable to the Plaintiff, making reasonable inferences and resolving contested facts

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

[4] *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (internal citation omitted) (emphasis added).

[5] *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotations and citations omitted).

and factual ambiguities in the Plaintiff's favor.[6] Plausibility under this standard is unrelated to probability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."[7] The inquiry is generally limited to the contents of the pleading and its attachments.[8] Read in combination with Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary," as the pleadings need only provide "fair notice of what the . . . claim is and the grounds upon which it rests."[9]

In cases like this, where facts related to municipal liability are alleged, the Court should give plaintiffs the benefit of the doubt where possible, as they have not yet had the opportunity for discovery.[10] Indeed, the Supreme Court has reiterated time and again that § 1983 cases are not subject to any kind of heightened pleading standard, as long as the facts alleged make a constitutional claim.[11]

## Summary of the Argument

Plaintiff and his partner were just trying to go home on Valentine's evening. Instead of letting them continue in peace, Calvert decided to

---

[6] *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citations omitted).

[7] *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[8] *Brand Coupon Network LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

[9] *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (internal citations omitted).

[10] *Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) ("At the motion-to-dismiss stage, without the benefit of discovery, these facts are enough to draw the reasonable inference that this custom was widespread . . . and known to policymakers."); *Thompson v. City of Galveston*, 800 F. Supp. 2d 826, 844–45 (S.D. Tex. 2011).

[11] *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (citations omitted).

initiate a stop for no apparent reason, attempt to arrest them for no apparent reason, and ultimately sicced his attack dog on Mr. Benfer, who viciously bit him and tried to shake him to death. These actions were part of a known custom within Baytown's police department, they are a result of a deficient training program, and they were ratified by the City's policymakers. As a result, both Defendants can be held liable for the claims stated against them.

## Argument

As an initial note, Plaintiff does not object to the video exhibits attached to Defendants' motion.[12] The videos fit within the exception described below, and demonstrate that Plaintiff's allegations, along with the narrative and analysis of his expert, are accurate and state more than plausible claims against Defendant Calvert.

He does, however, object to the inclusion of Calvert's offense report. As Defendants correctly recited, the Court cannot look outside the pleadings to rule on a motion to dismiss unless documents attached to the motion "are referred to in the plaintiff's complaint and are central to [his] claim[s]."[13] Defendants refer generally to the expert's statement without providing a pincite to argue that "Plaintiff's claims are based primarily on Officer Calvert's incident report and body warn [*sic*]

---

[12] Docs. 14-1, 14-2 (cited herein as "Dash Video" and "BWC Video," respectively).

[13] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (internal citations omitted).

camera," and thus should be included under the exception described in *Collins*.[14] But a look at the statement shows that she specifically relied on the "Charging Form and Probable Cause Statement of Officer B. Calvert dated February 15, 2021 (4 pages),"[15] not the 20-page offense report attached to Defendants' motion.[16] As a result, that document does *not* fall within the exception and should not be considered.

But even if that document could be considered, its contents cannot be considered true, factual, or trustworthy, especially to the extent that they contradict the factual allegations of the complaint. In deciding whether to grant judgment as a matter of law (which uses a higher standard than a motion to dismiss), courts may only credit a movant's evidence "to the extent that that evidence comes from *disinterested witnesses*."[17] When liability is disputed, an officer's account will invariably be favorable to himself, and the credibility of that account is crucial.[18] On a motion to dismiss, the Court should consider *only* Plaintiff's allegations, not evidence supplied by Defendants.[19] If the Court chooses to consider Defendant's offense report, it cannot be given factual credibility. And to the extent that Defendants rely on that

---

[14] Doc. 14 p. 10.

[15] Doc. 9-1 p. 4.

[16] *See* Doc. 14-3.

[17] *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).

[18] *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992).

[19] *See* § Standard of Review, *supra*.

report and its uncreditable perspective on Plaintiff's claims at the expense of his allegations, those arguments necessarily fail.

With that in mind, Plaintiff will now demonstrate that his claims against Calvert are strong and clearly overcome his assertion of the qualified immunity defense, and that his claims against the City are equally strong.

1. **All of Plaintiff's claims against Defendant Calvert easily survive both his motion to dismiss and his qualified immunity defense.**

Before detailing each claim against Calvert, it is worth describing the premise and decision-making leading up to the stop itself. Calvert, as the department's K9 unit, was en route to render crucial assistance to his fellow officers on a disturbance call.[20] Instead of attending to that task as assigned, he abandoned that duty in favor of initiating a traffic stop for a minor violation, which falls outside of his purview as a K9 officer.[21] Although he claims that he later *thought* that Plaintiff's vehicle *might* be stolen, from afar a silver SUV is far too ubiquitous to base a legitimate identification of a stolen vehicle, and when he gets close enough to identify Plaintiff's vehicle, it is clear that the *Mitsubishi cross-over* cannot be the *Toyota SUV* described in the BOLO.[22] With the stolen vehicle pretext disposed of, it is clear that Calvert abandoned his duty

---

[20] Doc. 9-1 pp. 7–8.

[21] Doc. 9-1 pp. 7–8.

[22] Doc. 9-1 pp. 7–9.

to assist his fellow officers for, at the absolute worst, issuing a minor traffic citation that was not his job to issue.[23] As a result, Calvert's subsequent decisions to violate Plaintiff's rights in numerous ways may not be all that surprising given that the stop was ill-fated and ill-advised from its inception.

Turning to the law, Plaintiff will first set out the qualified immunity standard, and then apply it to each claim. "As a theoretical backdrop, the doctrine of qualified immunity attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"[24] The affirmative defense of qualified immunity does not apply where a public official's conduct "violate[s] clearly established . . . constitutional rights of which a reasonable person would have known."[25]

At the outset, the Plaintiff first must plead facts that plausibly make out a constitutional injury.[26] To defeat qualified immunity, however, "the *plaintiff's version* of those disputed facts must also constitute a

---

[23] Doc. 9-1 pp. 7–9.

[24] *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)(quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[25] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[26] *Joseph*, 981 F.3d at 330.

violation of clearly established law."[27] In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[, which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances."[28] Generally though, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point.[29]

Moreover, the Fifth Circuit in *Cooper v. Brown* reminds us that when it comes to qualified immunity, "[t]he central concept is 'fair warning.'"[30] With respect to clear establishment specifically, it further clarifies that "'[t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[31] It goes on to conclude that for excessive force claims, "in an obvious case, the

---

[27] *Id.* (emphasis added).

[28] *Id.* (quotations, citations, and alterations omitted).

[29] *Id.* (quotations, citations, and alterations omitted).

[30] 844 F.3d 517, 524 (5th Cir. 2016) (citations omitted).

[31] *Id.* (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)).

*Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law."[32]

### 1.1. Unlawful detention, false arrest, and malicious prosecution under the Fourth and Fourteenth Amendments.

An arrest violates the Fourth Amendment when it is made without probable cause.[33] "Probable cause is an objective standard."[34] The Fifth Circuit in *Walden* clarified that "it requires inquiry into whether the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable man's belief that an offense has been or is being committed."[35] Specifically, the calculus "requires not merely a reasonable suspicion that a crime has been committed, but a reasonable basis under the circumstances for reaching that conclusion and for acting on it. As a corollary, moreover, of the rule that the police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause."[36] Further, an "arrest without probable cause violates the clearly established law defining an individual's right under the Fourth

---

[32] *Id.* (quoting *Newman*, 703 F.3d at 764) (internal quotation marks omitted).

[33] *Kerr v. California*, 374 U.S. 23, 37 (1963) (plurality opinion).

[34] *United States v. Walden*, 707 F.2d 129, 131 (5th Cir. 1983).

[35] *Id.* (citing *Adams v. Williams*, 407 U.S. 143, 148 (1972); *Brinegar v. United States*, 338 U.S. 160, 175–76 (1949); *United States v. Rojas*, 671 F.2d 159, 165 (5th Cir. 1982)).

[36] *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988).

Amendment."[37] As a final note, the Fifth Circuit has also found that claims of false arrest and false imprisonment, as here, "involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest [and] detention . . . without probable cause."[38] As Defendants correctly noted, *Terry*-stops need only be supported by reasonable suspicion.[39]

With respect to malicious prosecution, the Fifth Circuit in *Castellano* undertook a painstaking analysis of its own and the Supreme Court's precedent on the issue, and ultimately determined that a § 1983 malicious prosecution claim can protect, among other things, a plaintiff's Fourteenth Amendment due process right, including protection "against arbitrary acts of government by promoting fairness in procedure and 'by barring certain government actions regardless of the fairness of the procedures used to implement them.'"[40] Put differently, if a malicious prosecution robs a plaintiff of due process or otherwise taints the fairness of a procedure from certain arbitrary actions, then that claim may be pursued under § 1983.[41]

---

[37] *Davidson v. City of Stafford*, 848 F.3d 384, 391 (5th Cir. 2017) (citing *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013)).

[38] *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988) (citations omitted).

[39] *Arizona v. Johnson*, 555 U.S. 323, 326 (2009).

[40] *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

[41] *Id.* at 956–58 (explicating *Albright v. Oliver*, 510 U.S. 266 (1994)).

Here, there was no reasonable suspicion to initiate a stop, and no probable cause to support arrest or prosecution. First, with respect to the stop itself, there is no basis on the facts properly before this Court to find reasonable suspicion for any crime whatsoever. Although Calvert claimed that he wanted to stop Mr. Benfer's vehicle due to a potential red light violation, Plaintiff already pled that no such violation occurred, the criminal court found no evidence of a traffic violation, and the video begins with Mr. Benfer's completion of legal travel through the intersection.[42] While reasonable suspicion is a low standard, there is no possible allegation or evidence that Calvert could point to apart from his own self-serving statements that could lead this Court to objectively find the existence of reasonable suspicion for the traffic violation. And as discussed *supra*, not only was there no reasonable suspicion for him to "identify" Mr. Benfer's car as the BOLO for a silver SUV, he had proof positive that Mr. Benfer's Mitsubishi crossover with an identifiable license plate was, in fact, *not* a Toyota RAV4 SUV with no identifiable license plate information.[43]

Because no reasonable suspicion supported the stop in the first instance, probable cause did not support the subsequent arrest. Calvert argues that even if he did not have probable cause for the red light

---

[42] Doc. 9 ¶ 11; Dash Video at 0:00; Exhibit 1 (screenshot of the Dash Video showing the non-violation); *see also* Tex. Transp. Code § 544.007(b), (d) (the only two possible red light infringements, for which there is no evidence).

[43] Doc. 9-1 pp.7–9; Dash Video at 0:00–32.

violation or the stolen vehicle, that he did have probable cause for resisting arrest.[44] A violation occurs when a person "intentionally prevents or obstructs a person he knows is a peace officer . . . from effecting an arrest, search, or transportation of the actor or another *by using force against the peace officer*."[45] His only argument for probable cause is the conclusory (and false) statement that "[b]ased on the totality of the circumstances, Officer Calvert formed probable cause to arrest Plaintiff for resisting arrest when Plaintiff used force to resist being placed in handcuffs."[46] He cites to three sources of support, none of which provide any: First, he cites his own self-serving offense report that either should not be considered here or should not be given credibility; Second, he cites two paragraphs of Plaintiff's expert opinion, which clearly state that Mr. Benfer did not threaten or assault anyone, and that all he did was continue walking;[47] And third, he cites an 11-second portion of his body-worn camera video that only show Mr. Benfer trying to continue walking as Calvert grabs him.[48]

None of these sources can accurately be described as Mr. Benfer "using force *against*" Calvert. Even in the probable cause report used by

---

[44] Doc. 14 ¶ 22.

[45] Tex. Penal Code § 38.03(a) (emphasis added).

[46] Doc. 14 ¶ 22.

[47] Doc. 9-1 pp. 10–11.

[48] BWC Video at 0:24–35.

the expert, the most Calvert says is that Mr. Benfer "continued to walk away," and that at one point he "twisted his body towards me."[49] Neither of those actions require the subject (Mr. Benfer) "using force against" the object (Calvert), but instead are self-contained actions that the object (Mr. Benfer) was performing in relationship to the subject's actions (Calvert grabbing Mr. Benfer).

More importantly, the video does not show Mr. Benfer using force against Calvert, only that he is facing away and is trying to continue walking toward his home.[50] But this entire analysis with respect to the statute presupposes Mr. Benfer knowing that he was being arrested, which should not be assumed given that Calvert never told him that he was under arrest, nor what he was being arrested for; Calvert only asked Mr. Benfer to "stop," which does not necessarily imply an arrest.[51]

As a result, with no basis for reasonable suspicion to initiate the stop, nor a reason for Mr. Benfer to understand he was being arrested, nor probable cause to arrest Mr. Benfer of anything, Calvert violated Mr. Benfer's clearly established right to be free from unlawful detention and false arrest under the Fourth and Fourteenth Amendments.[52]

---

[49] Doc. 9-1 pp. 10, 12.

[50] BWC Video at 0:24–35.

[51] Doc. 9-1 p. 11; BWC Video at 0:28–32. A police officer telling a person to "stop" and grabbing them without accusing them of a crime or informing them that they are being arrested does not imply an arrest, it only indicates that the officer wants the subject to stop. But absent a reason to stop the person, the person is entitled to ignore that command.

[52] Nn. 33–39, *supra*.

With respect to malicious prosecution, Mr. Benfer is alleging exactly the kind of arbitrary act that is fundamentally unfair as contemplated in *Castellano*. Here, Calvert completely forewent the step of seeking a warrant that he knew would not issue, stopped Mr. Benfer for no articulable reason, arrested him without probable cause, and then charged him with a crime that he knew he had no evidence for—apart from his own false statements—to justify the unconstitutional arrest.[53] Such prosecution is fundamentally unfair, and allowing that kind of prosecution to flow completely flips the Constitution's prescribed burden of the *officer* finding probable cause, rather than the *innocent citizen* suffering arrest and refuting the officer's blatant lies.

### 1.2. Excessive force under the Fourth Amendment.

With respect to whether or not Calvert's use of the attack dog was excessive force under the Fourth Amendment, Plaintiff turns to the analysis set forth in *Joseph v. Bartlett*, one of the Fifth Circuit's more recent and thorough opinions on excessive force.[54] In that case, it noted that the Fourth Amendment is violated "when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force."[55] In conducting that inquiry, the Court looked at several factors: (1) the severity of the crime; (2) whether

---

[53] Doc. 9 ¶¶ 11–13.

[54] *Joseph*, 981 F.3d 319.

[55] *Id.* at 332 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

the suspect posed an immediate safety threat; (3) whether the suspect was actively resisting or attempting to evade arrest; (4) the relationship between the need for force and the amount used; (5) the timing, amount, and form of the suspect's resistance—including whether the suspect was engaged in "active" versus "passive" resistance; and (6) whether the officer selected the appropriate degree of force by taking measured actions that correspond to the suspect's resistance.[56] It further clarified that force is less justified or even *un*justified in the face of passive resistance, and that officers should not immediately resort to a taser or nightstick without attempting to use physical skill, negotiation, or commands.[57]

Moreover, in a dog bite similar case to the one at bar, Fifth Circuit concluded that because "[n]o reasonable officer could conclude that [the plaintiff] posed an immediate threat to [the K-9 officer] or others," that the extremely high use of force imposed by an attack dog was unreasonable in the circumstances.[58]

Here, it is clear that Calvert's use of near-lethal force in the form of his attack dog cannot be justified, and that all of the factors considered in *Joseph* either weigh against him or are neutral. Going through each

---

[56] *Id.* at 332–33 (internal quotations, citations, and annotations omitted).

[57] *Id.* (citing *Brothers v. Zoss*, 837 F.3d 513, 520 (5th Cir. 2015) ("[W]e have placed weight on the quickness with which law enforcement personnel have escalated from negotiation to force.")) (other citations omitted).

[58] *Cooper*, 844 F.3d at 522–23.

in turn: (1) As discussed *supra*, there was no crime when the arrest was initiated, and Mr. Benfer never used force against Calvert, so the unjustified arrest weighs heavily against Calvert; (2) Nothing in the video or the allegations suggests that Mr. Benfer posed a safety threat to Calvert or anyone else—even though Mr. Benfer was bigger than Calvert, he did not have armor like Calvert did, did not have access to weapons or defensive tools like Calvert did, and did not use any force or take any other actions to suggest that he was a threat;[59] (3) The worst possible construction of the facts has Mr. Benfer arguably "attempting to evade arrest," but even that would not overcome the other factors—instead, on the facts as the Court is to view them at this stage, no lawful arrest was taking place and Mr. Benfer was not aware that he was being arrested, so this factor should be considered neutral;[60] (4) the need for force was low at the absolute worst, but Calvert chose to use the highest level of force available to him short of his duty weapon, so this factor must also heavily weigh against him; (5) again, Mr. Benfer did not use force against Calvert, so any perceived resistance should not be considered as "active," and "passive" resistance at worst does not justify a high level of force, let alone near-deadly force; (6) Calvert's rapid escalation from non-authoritative verbal commands, to violently grabbing Mr. Benfer and pushing him around, to siccing an attack dog on him that,

---

[59] Doc. 9-1 p. 10.

[60] *See* n. 51, *supra*.

at one point, was exhibiting the "death jar" while dangerously biting Mr. Benfer's neck, cannot be classified as "measured" or corresponding with Mr. Benfer's actions.[61]

Moreover, none of these factors justify the 2 minutes and 14 seconds of the continued use of force by Calvert's attack dog.[62] As a result and under *Joseph*, *Cooper*, and the *Graham* factors themselves, Calvert violated Mr. Benfer's clearly established Fourth Amendment right to be free from excessive force when he used nearly deadly force in the form of his attack dog.

### 1.3. Assault under Texas state law.

Finally, Calvert argues that the state law claims against him should have been brought under the Texas Tort Claims Act (TTCA) against the City, and thus should be excluded under the election-of-remedies provision.[63] But there are several problems with his argument. First, Plaintiff specifically did not bring any tort claims against the City, so the election-of-remedies provision does not apply because Mr. Benfer did not so elect.[64] And second, the Defendant officers' reasoning suffers from a fatal flaw: the TTCA does not apply to the tort claims

---

[61] Doc. 9-1 p. 17.

[62] Doc. 9-1 p. 16.

[63] Doc. 15 pp. 19–20.

[64] *See* Doc. 9 ¶¶ 26–28.

against themm. By its own terms, the TTCA "does not apply to[ claims]: . . . arising out of assault, battery, . . . or any other intentional tort."[65]

## 2. Plaintiff has pled clearly plausible claims under Monell and ratification theories.

Plaintiff seeks to hold the City of Baytown liable under *Monell*. With respect to the *Monell* standard, the Fifth Circuit clarified that:

> [o]ur caselaw establishes three ways of establishing a municipal policy for the purposes of *Monell* liability. First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "perform the specific act that forms the basis of the § 1983 claim."[66]

A municipality may also be liable where its "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."[67] Failure to train establishes liability where a municipality "disregard[s] a known or obvious consequence of [its] action" such that

---

[65] Tex. Civ. Prac. & Rem. Code § 101.057(2).

[66] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (citations omitted).

[67] *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).

it is deliberately indifferent to the rights of those with whom the untrained employees interact.[68]

When working through this standard and the appropriate standard of review on a similar claim for municipal liability, Magistrate Judge Manske of the Western District of Texas offered the following relevant analysis:

> The Court should deny McLennan County's Motion as to Plaintiff's § 1983 claims. McLennan County argues that Plaintiff's allegations on McLennan County's policy, custom, or practice supporting violation of his constitutional rights and inadequacy of training and supervision are conclusory. A plaintiff cannot plead facts "peculiarly within the knowledge of defendants." *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). As to municipal liability, it is "exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011). Here, Plaintiff cannot plead with specificity a policy, custom, or practice or inadequacy in training or supervision because those facts are "peculiarly within the knowledge of [the] [D]efendant." *Schultea*, 47 F.3d at 1434. Plaintiff will be granted limited discovery concerning the policies and procedures identified by Plaintiff as being inadequate, and as this Court deems necessary.[69]

To the extent that liability here stems from the City's failure to adopt certain training and policies in several areas, the absence of or

---

[68] *Id.* (internal quotations, citations, and alterations omitted).

[69] *Goff v. McLennan County*, attached as Appendix.

failure to adopt an appropriate policy can be considered a policy in the same way that an affirmative policy is, especially when the City was aware of the need for a policy.[70] Notably, the Seventh Circuit in *Glisson* looked at Indiana Department of Corrections' guidelines as evidence that a jail medical provider had the knowledge of the need for a policy but chose not to act.[71] More strikingly in the context of the case at bar, the *en banc* Seventh Circuit in *J.K.J.* looked at the risk of sexual assault in a county jail, despite policies against such conduct, and determined that because it took no action with respect to detection, prevention, *or training*, that a jury was reasonable in holding the county liable under *Monell*.[72]

Further, the facts also support municipal liability on the related, but independent basis of ratification.[73] Relevant Supreme Court precedent "holds that post hoc ratification by a final policymaker is sufficient to subject a city to liability because decisions by final policymakers are policy."[74] This Court's lengthy discussion of the nuances of the ratification theory in *Hobart* is extremely worthwhile, but will not wholly be

---

[70] *J.K.J. v. Polk County*, 960 F.3d 367, 370, 375–76, 384 (7th Cir. 2020) (en banc) (internal citations omitted); *Glisson v. Indiana Department of Corrections*, 849 F.3d 372, 378–80, 382 (7th Cir. 2017) (internal citations omitted).

[71] *Glisson*, 849 F.3d at 380.

[72] *J.K.J.*, 960 F.3d at 370, 384.

[73] *See Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 793 (S.D. Tex. 2013).

[74] *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)).

reproduced here, although some discussion is warranted.[75] Notably, the cited cases came out after *Grandstaff v. Borger* (1985) and *Coon v. Ledbetter* (1986), so any argument that *Grandstaff* or its progeny changes that analysis is understandable, but flawed.[76] In relevant part, while the Court noted that there is no "principled basis for limited the ratification theory to so-called 'extreme factual scenarios'" (and Plaintiff agrees), the Fifth Circuit nonetheless has consistently held that ratification only applies to such circumstances.[77] The Court further notes that "[l]imited guidance exists as to the definition of a sufficiently extreme factual scenario," and quotes one of the main cases on the issue that provides "'for instance, an obvious violation of clearly established law'" as an example of "'sufficiently extreme conduct.'"[78]

Here, Plaintiff has clearly pled plausible *Monell* and ratification theories. Plaintiff alleged 5 incidences in the last 3 years of improper use of attack dogs by the City of Baytown, including other incidents perpetrated by Calvert.[79] Since the use of attack dogs is naturally low due to low supply and low need, 5 incidences in 3 years in a town of under

---

[75] *See id.* at 793–98.

[76] *Id.* at 794.

[77] *Id.* at 796.

[78] *Id.* at 795–96 (quoting *World Wide St. Preachers v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)).

[79] Doc. 9 ¶¶ 7–10, 14–17.

83,000 people[80] is a large number that only this Court can correct since the City is clearly unwilling to address the problem. Those incidences are a custom of misuse of attack dogs, of which Baytown policymakers are aware, that directly caused Mr. Benfer's injuries. Moreover, Mr. Benfer specifically alleged numerous areas where training was clearly deficient based on his limited knowledge prior to discovery that can obviously lead to exactly this type of harm if left unaddressed.[81] And finally, Mr. Benfer alleged ratification because the City reviewed the incident but failed to take any action against it, thus adopting it as part of its policy.[82] Because this was an "extreme factual scenario," both in the sense that a dog "death jarring" an innocent person's neck is extreme and in the sense that it violates clearly established law as discussed *supra*, it is an actionable claim against the City.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that Defendants' motion to dismiss be **denied**.

Respectfully submitted,

*/s/ Alexander C. Johnson*
Alexander C. Johnson

---

[80] This Court may take judicial notice of this fact from 2021 U.S. Census data (https://www.census.gov/quickfacts/fact/table/baytowncitytexas,US/PST045221) under Federal Rule of Evidence 201.

[81] Doc. 9-1 pp. 23–33.

[82] Doc. 9 ¶ 13.

Kallinen Law PLLC
State Bar of Texas
    Bar No. 24123583
U.S. Southern District of Texas
    Federal ID No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
Fax: 713.893.6737
Email: alex@acj.legal
**Attorney for Plaintiff**

_/s/Randall L. Kallinen_
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
    Bar No. 00790995
U.S. Southern District of Texas
    Federal ID No. 19417
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
Email: AttorneyKallinen@aol.com
**Attorney for Plaintiff**

## Certificate of Service

I certify that on November 16th, 2022, I have served a true and correct copy of the foregoing document that was delivered by the ECF in accordance with the Federal Rules of Civil Procedure to all ECF notice attorneys of record.

_/s/Alexander C. Johnson_
Alexander C. Johnson